91 N.J. Super. 67 (1966)
219 A.2d 193
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
LINWOOD W. JONES, DEFENDANT.
Superior Court of New Jersey, Law Division-Criminal.
Decided March 28, 1966.
*68 Mr. Martin A. Herman for defendant.
Mr. Ernest L. Alvino, Assistant Prosecutor of Gloucester County, for the State (Mr. Alvin E. Granite, prosecutor).
KRAMER, J.C.C. (temporarily assigned).
This matter is before the court on application of defendant for post-conviction relief, and motion by prosecutor to dismiss.
Defendant was indicted and plead guilty to the crime of rape and is presently serving a 5-10-year sentence in the New Jersey State Prison.
*69 On September 17, 1964 defendant was arrested and placed in a police lineup along with four other men. Both the victim and a young boy who was in the house at the time of the offense positively identified petitioner as the assailant. Subsequent to this identification defendant confessed his guilt and gave a signed statement to that effect. On October 9, 1964 defendant, appearing with assigned counsel, pleaded guilty to the charge of rape. An examination by the Menlo Park Diagnostic Center was ordered pursuant to N.J.S. 2A:164-3 et seq. Pursuant to the recommendation of the Diagnostic Center that he be handled correctionally, defendant was sentenced to State Prison on December 11, 1964.

I.
Defendant first contends that his confession was illegally coerced because it resulted from his identification in a police lineup. It is alleged that subjection of an accused to a lineup is unconstitutional, relying on Butler v. Crumlish, 229 F. Supp. 565 (E.D. Pa. 1964). In that case the court enjoined the Philadelphia police from placing defendants, who had been arrested on numerous charges including rape, in a lineup for possible identification by victims of similar crimes. The court reasoned that defendants were in custody solely because they were unable to post bail and that to force them to appear in a lineup while those who could afford bail could not be so forced was an invidious discrimination.
This decision by a lower federal court is not binding on the New Jersey courts. See State v. Coleman, 46 N.J. 16 (1965). Moreover, its reasoning has been repudiated even in the Eastern District of Pennsylvania by Morris v. Crumlish, 239 F. Supp. 498 (E.D. Pa. 1965). In that case the court refused to enjoin the placing of defendant in a police lineup. It was held that a person in custody is not entitled to the same privileges as a person out on bail, and that a police lineup does not violate constitutional guarantees.
*70 N.J.S. 2A:84A-19 provides:
"(a) no person has the privilege to refuse to submit to examination for the purpose of discovering or recording his corporal features and other identifying characteristics or his physical or mental condition."
In State v. King, 44 N.J. 346 (1965), defendant had been placed in a lineup after his arrest and told to repeat the words that the robber had used at the time of the crime. He did so and was identified as the guilty party. It was contended on appeal that it was a violation of the privilege against self-incrimination to permit such identification evidence at trial. Our Supreme Court affirmed the conviction, holding that defendant's constitutional rights had not been infringed, stating:
"Therefore, certain types of examination or inspection are outside the scope of the privilege because non-testimonial in character. For example, fingerprinting, photographing, examination of the body of a person for identifying characteristics, drunkometer tests and blood tests, all may be compelled since to do so does not require the witness to disclose any knowledge he might have." (at p. 357)
Thus, it is clear that in New Jersey it is permissible to require a person accused of a crime to submit to a lineup, and evidence obtained as a result of such a procedure is admissible.
It should also be noted that Officer Malin testified that defendant freely confessed his guilt after being given timely and full warning of his rights to counsel and to remain silent, and that he entered a plea of guilty on October 9, 1965, 11 days after counsel had been assigned, so that the confession was never used against him. Defendant did not request counsel prior to giving his confession, and so the doctrine in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 is not applicable. The contention that defendant's confession and plea of guilty were coerced through the unconstitutional means of a police lineup is without merit.

*71 II.
Defendant next contends that he was entitled to a copy of the report of the Diagnostic Center and to a hearing thereon. The report recommended correctional procedures rather than commitment to an institution for specialized treatment. Pursuant to this recommendation defendant was sentenced to not less than five nor more than ten years at the New Jersey State Prison. Relying on R.R. 3:7-10(c) and State v. Wingler, 25 N.J. 161 (1957), defendant contends that he was entitled to a copy of the report and a hearing regardless of whether he was classified as requiring special treatment under the Sex Offender Act, N.J.S. 2A:164-3 et seq.
R.R. 3:7-10(c) provides:
"In every case in which the offender is convicted of one or more of the offenses enumerated in the `Sex Offender Act', N.J.S.A. 2A:164-3 et seq., the court shall, before imposing sentence or making disposition of the offender under the provisions of the said act, furnish to the defendant or his counsel a copy of the report of the Diagnostic Center and shall afford to the offender an opportunity to be heard thereon." (Emphasis added).
The language relied on in State v. Wingler, supra, provides:
"Nevertheless we are convinced that the interests of justice will be advanced if, in every case which arises hereafter, the trial court, before imposing sentence under the Sex Offender Act submits the Diagnostic Center's report to the defendant and affords opportunity to be heard thereon." (Emphasis added).
It is clear that the correct interpretation of these words is that a defendant is entitled to a copy of the report and a hearing thereon only when he has been found to warrant specialized treatment under the Sex Offender Act. Where, as in this case, there is no recommendation of special treatment by the Diagnostic Center, defendant is sentenced without regard to any of the provisions of the Sex Offender Act and is *72 not entitled to the benefit of any of the procedures provided for those whose case is disposed of under the act.
It may also be noted that in State v. Wingler is was decided that there is no constitutional requirement that there be a hearing even where the case is disposed of under the Sex Offender Act.
Therefore, the contention that defendant was entitled to a copy of the report of the Diagnostic Center and a hearing thereon is lacking in merit.

III.
Defendant next contends that his sentence is illegal because at the time of sentencing reference was made to his juvenile record. He relies on N.J.S. 2A:4-39 and Kozler v. New York Telephone Co., 93 N.J.L. 279 (Sup. Ct. 1920).
N.J.S. 2A:4-39 provides:
"No adjudication upon the status of a child under 18 years of age shall operate to impose any of the civil disabilities ordinarily imposed by conviction, nor shall such a child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction.
The disposition of a child under 18 years of age or any evidence given in the juvenile and domestic relations court shall not be admissible as evidence against the child in any case or proceeding in any other court, nor shall such disposition or evidence be held against the child's record in any future civil service examination, appointment or application."
The statute merely provides that a juvenile record may not be deemed a criminal conviction nor be used in evidence. No mention is made of prohibiting the use of such a record in determining the sentence of a criminal.
In Kozler v. New York Telephone Co., supra, it was held that a juvenile conviction was not admissible in an action to recover a reward for information leading to an arrest. This decision is clearly correct in view of the statute cited above, but is not controlling in the situation where the juvenile *73 record is considered in sentencing. Our Supreme Court has recently decided that such a consideration of a juvenile record is proper. In State v. Hodgson, 44 N.J. 151 (1965), the court stated:
"The defendant's final contention is that his sentence was excessively harsh and was based on improper standards. This contention lacks merit. Before he sentenced the defendant, the trial judge undoubtedly gave consideration to the presentence report and defense counsel's argument. He mentioned the fact that, although the defendant's activity as a juvenile was not to be considered as a record, it did indicate that the defendant had been `in and out of trouble consistently since 1954, since he was 11 years old. 1954, 1955, 1956, 1957, 1958 and of course 1959. He has been in constant trouble.' And he expressed the thought, gathered from the entire record of the present proceeding, that it was the defendant's influence on the other participants in the armed robbery that led them originally to commit perjury before they ultimately testified as to the details of the holdup on October 2nd. We find no impropriety in the reference to all of the forgoing which bore on the defendant's behavior both early and recent. See State v. Ivan, 33 N.J. 197 (1960); State v. Jenkins, 32 N.J. 109, 115 (1960); cf. State v. Johnson, 67 N.J. Super. 414, 432-434 (App. Div. 1961)." (at p. 164)
Defendant's contention that a prior juvenile record may not be considered in sentencing is without merit.

IV.
Finally, defendant contends that the failure of the Diagnostic Center to give him a complete physical examination, as required by N.J.S. 2A:164-3, vitiates the entire sentencing procedure. This examination is part of the complete mental and physical examination given a sex offender to determine whether he should be placed in prison or in a program of specialized treatment. In this case it was determined that petitioner's mental or psychiatric condition was such that he should be handled correctionally. A complete physical examination was not required to determine if petitioner could go to prison since, in the words of the report of the Diagnostic Center, "This individual is a tall physically strong * * * 19 year old * * *." There appears to be no reason why defendant, *74 who was healthy enough to have committed forcible rape, is not physically capable of serving a prison sentence.
Defendant cites the case of State v. Bates, an unreported decision of the Essex County Court, which held that the failure of the Diagnostic Center to give defendant a physical examination was prejudicial to defendant and that resentencing would be required. In Bates there were some serious questions pertaining to defendant's physical condition, which would undoubtedly distinguish it from this case on its facts; this court is constrained to hold that it does not agree with the holding in Bates nor is it bound by that decision. The mere lack of a physical examination of a defendant by the Diagnostic Center is not a sufficient ground to vitiate the sentence.
The questions raised by defendant in this application can all be answered by references to the record. A hearing is not required. The application is denied.