PEOPLE v McFARLIN

1. INFANTS—JUVENILE PROCEEDINGS—EVIDENCE.

The term "evidence", used in the statute prohibiting the use of prior juvenile dispositions as evidence in any court outside the juvenile court system for any purpose whatever, encompasses far more than simply testimony and matters presented at trial (MCLA 712A.23).

2. CRIMINAL LAW—SENTENCING—PRIOR JUVENILE RECORD.

A criminal defendant's prior juvenile record may not be considered by the trial judge in determining sentence (MCLA 712A.23).

3. CRIMINAL LAW—JUVENILE RECORDS—USE IN CRIMINAL PROCESS.

The juvenile court system is a noncriminal rehabilitative process whose aim of preventing the youth from being stigmatized as a criminal is distinctly different from the goals of the criminal process, and the use of a criminal defendant's juvenile record in a criminal proceeding even if solely for the purpose of determining sentence would subvert the noncriminal nature of the juvenile court system.

Appeal from Genesee, John W. Baker, J. Submitted Division 2 March 7, 1972, at Lansing. (Docket No. 12359.) Decided May 26, 1972. Leave to appeal granted, 388 Mich 761.

Gary M. McFarlin was convicted, on his plea of guilty, of larceny in a building. Defendant appeals. Reversed and remanded for resentencing.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,*

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 47 Am Jur 2d, Juvenile Courts §§ 4, 8.

Chief Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, and *Richard S. McMillin,* Assistant Defender, for defendant.

Before: LESINSKI, C. J., and BRONSON and TARGONSKI,* JJ.

LESINSKI, C. J. Defendant Gary Maurice McFarlin was convicted, upon a plea of guilty, of committing larceny in a building. MCLA 750.360; MSA 28.592. He appeals as of right.

Defendant contends that the trial court erred when it stated that it took into consideration his prior juvenile court record in imposing sentence.

MCLA 712A.23; MSA 27.3178(598.23) states:

"A disposition of any child under this chapter, or any evidence given in such case, shall not in any civil, criminal or any other cause or proceeding whatever in any court, be lawful or proper evidence against such child for any purpose whatever, except in subsequent cases against the same child under this chapter."

It would appear that when this statute enunciated a prohibition against the use of juvenile records as evidence in any court outside the juvenile court system for any purpose whatever, it meant "for any purpose whatever". The basic thrust of this statute would seem designed to build a barrier between juvenile and adult proceedings, which prohibits entry from the former into the latter.

This interpretation, after all, would find itself buoyed by the very underpinnings of the juvenile

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

court system as a noncriminal rehabilitative proceeding. See Mack, *The Juvenile Court,* 23 Harv L Rev 104 (1909). Instead, we have until now chosen to interpret the statute's intended purpose in a way which allowed the use of juvenile records at sentencing. This has been accomplished by myopically focusing our attention on the word "evidence" in the statute to the utter disregard of its contextual setting. The result of our actions has been a semantic extraction of the *raison d'etre* from the heart of the juvenile court process. Having now realized this, we believe a reexamination of our prior decisions on this question is in order.

*People v Coleman,* 19 Mich App 250, 256 (1969), was the first Michigan case to present the issue of whether juvenile records could be used at sentencing. In order to uphold their use, this Court found itself constrained to engage in a two-step process designed to whittle away at the statutory prohibition embodied in § 23 of chapter 12A of the probate code (MCLA 712A.23; MSA 27.3178 [598.23]). The Court first relied on MCLA 771.14; MSA 28.1144, which requires a probation officer prior to sentencing to "inquire into the antecedents, character and circumstance of such person or persons, and shall report thereon in writing to such court or magistrate". After defining the terms "antecedents" and "character", the Court concluded:

"To be true and complete, the required inquiry must include whatever reasonably obtainable juvenile record an accused may have."

Having expansively read MCLA 771.14; MSA 28.1144, the Court was forced to limit the express prohibitions of MCLA 712A.23; MSA 27.3178(598.23), in order to reconcile the two statutes. The Court stated at 256:

"Nor does § 23 preclude examination of juvenile records for the purpose of sentencing. The express terms of the statutory prohibition bar only the use of prior juvenile dispositions as 'evidence'. Read in the light of its generally accepted meaning, 'evidence' connotes testimony and matters actually presented at trial. The post-conviction examination of juvenile records in order to impose a fair and just sentence is not a use of such records as 'evidence'. *Cf. Commonwealth v Myers* (1958), 393 Pa 224 (144 A2d 367); *State v Jones* (1966), 91 NJ Super 67 (219 A2d 193)."[1]

Webster's Third New International Dictionary Unabridged (1965), defines "evidence" as:

"[S]omething that furnishes or tends to furnish proof: means of making proof: * * * something legally submitted to a competent tribunal as a means of ascertaining the truth of any alleged matter of fact under investigation before it."

Black's Law Dictionary, 4th Ed (1951), recognizes such varied types of "evidence" as "legal evidence", "moral evidence", "parole evidence", "cumulative evidence", "circumstantial evidence", *etc.*

No one can read the penumbral definitions given to the word "evidence" without concluding that it encompasses far more than simply testimony and matters presented at trial. Contrary to our interpretation in *Coleman, supra,* the word "evidence" when modified by the phrase "for any purpose whatever" connotes an expansive rather than narrow reading of the term. The *Coleman* decision, consequently, appears to have unduly limited the

---

[1] It is to be noted that in the two cases cited in *People v Coleman,* 19 Mich App 250 (1969), *State v Jones,* 91 NJ Super 67; 219 A2d 193 (1966); and *Commonwealth v Myers,* 393 Pa 224; 144 A2d 367 (1958), the statutes in those states differed from MCLA 712A.23; MSA 27.3178(598.23), in that they lacked the all-encompassing prohibition embodied in the words "for any purpose whatever".

prohibitions of MCLA 712A.23; MSA 27.3178(598.23).

In *People v Charles Williams,* 19 Mich App 544, 545–546 (1969), a *per curiam* opinion in which this writer took part, we again upheld the use of a defendant's prior juvenile record at sentencing. In addition to relying on the rationale of *Coleman, supra,* this Court justified its decision by stating:

"That the trial judge may consider additional factors in determining sentence is well settled. *People v Donald Williams,* 225 Mich 133 (1923); *People v Losinger,* 331 Mich 490 (1951); *People v Guillett,* 342 Mich 1 (1955); *People v Camak,* 5 Mich App 655 (1967)."

The Court's opinions thus made it appear that the use of a juvenile record at sentencing was simply a concomitant of the "additional factors" already allowed in the determination of a sentence. A close examination of the cases cited in *Charles Williams* shows, however, that the "additional factors" at issue in those cases were never in direct conflict with a statutory prohibition such as we have in MCLA 712A.23; MSA 27.3178(598.23). In *People v Donald Williams,* the additional factor was nothing more than an investigation of defendant's character. In *People v Losinger,* the Court held that there was no error in considering public records in sentencing. The question of the use of juvenile records at sentencing and its possible conflict with MCLA 712A.23; MSA 27.3178(598.23), was never raised or considered. Neither was it raised or considered in *Guillett* or *Camak.* The precedential value of these cases was, therefore, dubious at best.

The Supreme Court denied defendant Charles Williams' request for leave to appeal. *People v Charles Williams,* 384 Mich 753 (1970), Justices

ADAMS, T. M. KAVANAGH and T. G. KAVANAGH
dissenting. In their dissent, Chief Justice T. M.
KAVANAGH and Justice T. G. KAVANAGH stated
their unequivocal opposition to the *Coleman* and
*Williams* court interpretation of MCLA 712A.23;
MSA 27.3178(598.23):

"We dissent from the order denying leave to appeal
in this case for the reason that the express language of
MCLA 712A.23; MSA 27.3178(598.23), forbids the use of
petitioner's juvenile record in any proceeding in any
court for any purpose whatever.

"The contrary holding by the Court of Appeals' panel
in *People v Coleman,* 19 Mich App 250 (1969), is pat-
ently erroneous. The statutory proscription of the use of
the child's 'disposition' as well as 'any evidence given in
such case' as not 'lawful or proper evidence against
such child for any purpose whatever' precludes the use
of the word 'evidence' as suggested by the Court of
Appeals."

We are today in accord with Chief Justice T. M.
KAVANAGH and Justice T. G. KAVANAGH's inter-
pretation of this statute. As our own reexamina-
tion of *Coleman* and *Williams* has indicated, we
were in error in excluding the prohibitions of
MCLA 712A.23; MSA 27.3178(598.23), from the
sentencing process. To do anything but confess
error in *Coleman* and *Williams* and their progeny,[2]
would be to leave this Court's decisions in irrecon-
cilable conflict with the purpose of the statute as
stated in *People v Smallwood,* 306 Mich 49, 53
(1943):

"Its aim is 'to hide youthful errors from the full gaze
of the public and bury them in the graveyard of the

_____

[2] See, also, *People v Matthews,* 22 Mich App 619 (1970); *People v
Davidson,* 23 Mich App 4 (1970); *People v Welch,* 25 Mich App 694
(1970); *People v Ward,* 33 Mich App 308 (1971); *People v Wright,* 35
Mich App 365 (1971); and *People v Potts,* 39 Mich App 104 (1972).

forgotten past.' *State v Guerrero,* 58 Ariz 421; 120 P2d 798 (1942). It prohibits the use of juvenile court proceedings or evidence obtained therein against a child in any other court to. discredit him as one possessing a criminal history."

In *McKeiver v Pennsylvania,* 403 US 528; 91 S Ct 1976; 29 L Ed 2d 647 (1971), the United States Supreme Court held that there was no constitutional right to a trial by jury in a juvenile court proceeding. In doing so the majority *per* Justice Blackmun recognized that there were basic and controlling differences between the juvenile court process and a criminal trial, and that those differences should be maintained.

"Finally, the arguments advanced by the juveniles here are, of course, the identical arguments that underlie the demand for the jury trial for criminal proceedings. The arguments necessarily equate the juvenile proceeding—or at least the adjudicative phase of it—with the criminal trial. Whether they should be so equated is our issue. Concern about the inapplicability of exclusionary and other rules of evidence, about the juvenile court judge's possible awareness of the juvenile's prior record and of the contents of the social file; about repeated appearances of the same familiar witnesses in the persons of juvenile and probation officers and social workers—all to the effect that this will create the likelihood of pre-judgment—chooses to ignore it seems to us, every aspect of fairness, of concern, of sympathy, and of paternal attention that the juvenile court system contemplates.

"If the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment we are disinclined to give impetus to it." 403 US at 550–551; 91 S Ct at 1989; 29 L Ed 2d at 664.

The majority cited with approval the opinion of Justice Roberts of the Pennsylvania Supreme Court:

" '[T]he juvenile system has available and utilizes much more fully various diagnostic and rehabilitative services' that are 'far superior to those available in the regular criminal process.' * * * the end result of a declaration of delinquency '*is* significantly different from and less onerous than a finding of criminal guilt' and 'we are not yet convinced that the current practices do not contain the seeds from which a truly appropriate system can be brought forth.' " 403 US at 539–540; 91 S Ct at 1983; 29 L Ed 2d at 657–658.

The majority also relied upon the Task Force Report: Juvenile Delinquency and Youth Crime, President's Commission on Law Enforcement and Administration of Justice (1967). While recognizing the juvenile court system's failures, the Task Force Report rejects all thought of identical treatment for juvenile and adult criminals:

" 'Nevertheless, study of the juvenile courts does not necessarily lead to the conclusion that the time has come to jettison the experiment and remand the disposition of children charged with crime to the criminal courts of the country. As trying as are the problems of the juvenile courts, the problems of the criminal courts, particularly those of the lower courts, which would fall heir to much of the juvenile court jurisdiction, are even graver; and the ideal of separate treatment of children is still worth pursuing. What is required is rather a revised philosophy of the juvenile court based on the recognition that in the past our reach exceeded our grasp. The spirit that animated the juvenile court movement was fed in part by a humanitarian compassion for offenders who were children. That willingness to understand and treat people who threaten public safety and security should be nurtured, not turned aside as hopeless sentimentality, both because it is civilized and because social protection itself demands constant search for alternatives to the crude and limited expedient of condemnation and punishment. But

neither should it be allowed to outrun reality. The juvenile court is a court of law, charged like other agencies of criminal justice with protecting the community against threatening conduct. Rehabilitating offenders through individualized handling is one way of providing protection, and appropriately the primary way in dealing with children. But the guiding consideration for a court of law that deals with threatening conduct is nonetheless protection of the community. The juvenile court, like other courts, is therefore obliged to employ all the means at hand, not excluding incapacitation, for achieving that protection. What should distinguish the juvenile from the criminal courts is greater emphasis on rehabilitation, not exclusive preoccupation with it.' Task Force Report 9." Note 6, 403 US at 546; 91 S Ct at 1986–1987; 29 L Ed 2d at 661–662.

Similarly, Justice White in his concurrence recognized the paternalistic nature of a juvenile court proceeding:

"The criminal law proceeds on the theory that defendants have a will and are responsible for their actions. A finding of guilt establishes that they have chosen to engage in conduct so reprehensible and injurious to others that they must be punished to deter them and others from crime. Guilty defendants are considered blameworthy; they are branded and treated as such, however much the State also pursues rehabilitative ends in the criminal justice system.

"For the most part, the juvenile justice system rests on more deterministic assumptions. Reprehensible acts by juveniles are not deemed the consequence of mature and malevolent choice but of environmental pressures (or lack of them) or of other forces beyond their control. Hence the state legislative judgment not to stigmatize the juvenile delinquent by branding him a criminal; his conduct is not deemed so blameworthy that punishment is required to deter him or others.

\*   \*   \*

"Not only are those risks that mandate juries in criminal cases of lesser magnitude in juvenile court

adjudications, but the consequences of adjudication are less severe than those flowing from verdicts of criminal guilt. This is plainly so in theory, and in practice there remains a substantial gulf between criminal guilt and delinquency, whatever the failings of the juvenile court in practice may be.

*   *   *

"For me there remain differences of substance between criminal and juvenile courts. They are quite enough for me to hold that a jury is not required in the latter." 403 US at 551–552, 553; 91 S Ct at 1989–1990; 29 L Ed 2d at 664–665.

The focal point of the *McKeiver* decision is its reliance on the basic distinctions between juvenile and criminal proceedings. As the commentator for the University of Michigan Law Review stated:

"A comparison of the reasoning of Justice Blackmun's majority opinion with the four other opinions in *McKeiver* reveals the standard by which the Court now measures the due process rights of juveniles in juvenile court proceedings. The majority's first and perhaps most crucial contention was that there are not sufficient similarities between the juvenile and criminal systems to equate them. It is indeed a crucial argument for the majority because if the juvenile system cannot be distinguished from the criminal system, *Duncan* would require that the right to a jury trial be made available in juvenile proceedings. To support the proposition that the two systems are significantly different and therefore deserve separate treatment, the majority noted the Court's careful avoidance in the past of the criminal label for juvenile proceedings. * * *

"This approach suggests that the Court's real purpose in foregoing the use of the criminal label was *not* to deny juveniles some of the rights extended to criminals, but rather to avoid bringing the added disabilities of being adjudged a criminal upon a child already stigmatized by being declared delinquent." 70 Mich L Rev 171, 178 (Nov, 1971).

The constitutional rights afforded juveniles have been held to be substantially less than those given to adult offenders. This has been justified on the basis that juvenile proceedings are not criminal in nature and therefore they carry none of the long-range consequences inherent in a criminal conviction. Having adopted this view of juvenile proceedings, we find it unsound to allow a trial judge to rely on the prior juvenile record of a defendant at sentencing, when that record is compiled by a procedure inapposite to our criminal justice system.

The noncriminal nature of the juvenile court proceeding in Michigan would be subverted if a juvenile's record could somehow find its way into a criminal trial even if it be solely for purposes of determining sentencing. The Michigan Legislature recognized this when they totally and unequivocally excluded the use of a juvenile's record at a criminal proceeding "for any purpose whatever". MCLA 712A.23; MSA 27.3178(598.23). The trial court was, therefore, in error when it considered defendant's prior juvenile record in aggravation of sentence.

Whereas the trial judge has been made aware of the juvenile record and we would have no way of knowing if his resentencing would be affected by this prior knowledge, we hereby direct that a new presentence report which excludes reference to the juvenile record be obtained and the defendant be resentenced by the trial judge's alternate or such judge as the presiding judge shall designate.

Reversed and remanded for resentencing.

All concurred.