304 A.2d 891.

FREDERICK A. TAYLOR *vs.* FRANCIS A. HOWARD, *Warden.*

MAY 21, 1973.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

Roberts, C. J.   This petition for a writ of habeas corpus was brought by the petitioner to obtain his discharge from the allegedly unlawful custody of the respondent warden. At the time the petition was brought, the petitioner had been in the custody of the respondent pursuant to an order of a justice of the Superior Court sentencing him on June 26, 1964, to a term of 25 years in the Adult Correctional Institutions after he had pleaded guilty to a charge of murder in the second degree.

The record discloses that on December 25, 1963, the defendant was arrested in connection with a so-called "rolling" of an intoxicated man by the name of Cahir, who died as a

result thereof. At that time he was 16 years of age, and on December 27, 1963, the Family Court waived jurisdiction. He was thereupon indicted on a charge of murder in the first degree. Subsequently, the indictment was amended to charge murder in the second degree. The petitioner pleaded guilty thereto, and sentence was imposed. We issued the writ for the sole purpose of determining whether directing the attention of the sentencing justice to the fact that defendant had a juvenile record was violative of the provisions of G. L. 1956 (1969 Reenactment) §14-1-40.[1]

At the time petitioner pleaded to the amended indictment, the prosecutor informed the court that petitioner had a juvenile record. Specifically, he said: "According to the presentence report and investigation we have made, it must be stated, and I think it is proper, while he has no previous criminal record as such, as a juvenile he was far from a model boy." To this the court responded: "He was known to our Juvenile Court." The respondent conceded in his answer to the order to show cause that the presentence report states, "10. *Previous Record*: Subject has a juvenile record."

It is clear, then, that we are confronted here with the question whether such direction of the court's attention to petitioner's juvenile record was violative of the pertinent portion of §14-1-40 which reads: "The disposition of a child

---

[1]Section 14-1-40 reads as follows: "No adjudication upon the status of any child in the jurisdiction of the court shall operate to impose any of the civil disabilities ordinarily resulting from a conviction, nor shall any child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction, nor shall any child be charged with or convicted of a crime in any court, except as provided in this chapter. The disposition of a child or any evidence given in the court shall not be admissible as evidence against the child in any case or proceeding in any other court, nor shall such disposition or evidence operate to disqualify a child in any future civil service application, examination or appointment."

**530**

or any evidence given in the court shall not be admissible as evidence against the child in any case or proceeding in any other court * * *." The Legislature has not defined the word "evidence" in the statute, but obviously it intended to use the word in its generally accepted meaning.

Black's Law Dictionary 656 (Rev. 4th ed. 1968) defines "evidence" as "[a]ny species of proof, or probative matter, legally presented at the trial of an issue, by the act of the parties and through the medium of witnesses, records, documents, concrete objects, etc., for the purpose of inducing belief in the minds of the court or jury as to their contention." In short, evidence constitutes the testimony and matters presented at trial for the purpose of proving a fact in issue.

In enacting §14-1-40, the General Assembly intended that a juvenile who had been found delinquent would not be deemed to have a criminal record. As such, a juvenile offender would avoid the civil disabilities and the social and economic stigma which accompany a criminal conviction. Conscious of the informal character of procedures in the Family Court, the Legislature also wanted to prohibit the use of any evidence adduced in Family Court or of the result of any adjudication in the Family Court in determining the guilt or innocence of a former juvenile offender for any offense tried in any other court. To accomplish this end, the Legislature inserted in §14-1-40 the sentence under discussion. This provision prevents a Family Court finding from being used in the way a criminal conviction could be used at trial. For example, if a defendant testifies in his own defense, his prior criminal record is admissible for purposes of impeachment; however, his juvenile record would not be admissible.

The Pennsylvania Supreme Court was confronted with the same issue and a statute similar to that with which we are now dealing in *Commonwealth ex rel. Hendrickson*

v. *Myers,* 393 Pa. 224, 144 A.2d 367 (1958). After defining "evidence" as "testimony and matters actually presented at the trial," the court went on to find: "The Juvenile Court record was not introduced or presented as evidence in the trial. Moreover, the Juvenile Court record was not considered, even after the trial, to determine a factual issue, i.e., his guilt or innocence of the crimes with which he was charged; on the contrary, the juvenile record was taken into consideration by the trial Judge *after the appellant had pleaded guilty* and then only for the purpose of imposing a fair, proper and just sentence."

A number of jurisdictions have followed the Pennsylvania view in construing statutes similar to §14-1-40 and concluded that a judicial procedure held for the purpose of imposing sentence upon a defendant after his guilt has been determined at a trial or admitted by a plea is not a case or a proceeding within the meaning of the proscription of §14-1-40. *Berfield* v. *State,* 458 P.2d 1008 (Alas. 1969); *State* v. *Fierro,* 101 Ariz. 118, 416 P.2d 551 (1966); *Massey* v. *State,* 256 A.2d 271 (Del. 1969); *State* v. *Jones,* 91 N.J.Super. 67, 219 A.2d 193 (1966). We adopt that view and hold that the reference by the prosecutor to the fact that petitioner had a juvenile record did not violate the pertinent provisions of said §14-1-40.

Neither are we of the opinion that the presentence report filed with the court disclosing that this defendant had a juvenile record was violative of the pertinent provisions of §14-1-40. A juvenile record, though inadmissible evidence in the course of a trial, contains relevant information which assists a trial justice in imposing sentence. Modern concepts of punishment and rehabilitation impose a duty on a sentencing judge to treat each defendant on an individual basis by focusing on his background and characteristics.

Our Legislature embraced such concepts and contem-

plated an individual approach to punishment when it enacted G. L. 1956 (1969 Reenactment) §12-19-6, which requires a judge to receive, prior to sentencing, a presentence report from the administrator of probation and parole. Prior to a 1972 amendment,[2] §12-19-6 mandated that presentence reports include, in part, "\* \* \* the criminal record, social history and present condition of the defendant and any other pertinent information or recommendations as may be helpful in aiding the court in its consideration of the sentence to be imposed."

No formal limitations exist for the contents of presentence reports. They may rest on hearsay and contain information bearing no relation to the crime with which the defendant is charged. *Gregg* v. *United States,* 394 U. S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969); *Williams* v. *New York,* 337 U. S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). The rationale for permitting a sentencing judge to look outside the evidence in the case, even to matters which the rules of evidence would preclude from admission at a trial, lies in the fact that when the judge refers to the presentence report, he is no longer confined to the narrow issue of guilt. The defendant has been convicted or has pleaded guilty, and no issue of fact pertaining to the defendant's guilt or innocence remains. The judge uses the report to help him in determining the sentence to be imposed within his discretion as limited by statute. Thus, the Supreme Court of the United States has said: "Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information

---

[2]The instant sentencing occurred in 1964, and thus §12-19-6 as it was prior to the 1972 amendment is applicable for purposes of this petition. Public Laws 1972, ch. 169, sec. 25, deleted from §12-19-6 the requirements for the contents of presentence reports because such required contents are now found in Super. R. Crim. P. 32. The language of Rule 32 is somewhat different from that of §12-19-6, but the changes do not constitute substantive alteration.

possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial." *Williams* v. *New York, supra* at 247, 69 S.Ct. at 1083, 93 L.Ed. at 1342.

We feel that a defendant's juvenile record is competent and relevant information of which a sentencing judge may properly be made aware. The petitioner, however, argues that §12-19-6 is not applicable to the sentencing of a juvenile. Here, however, the Family Court waived its jurisdiction over petitioner and §14-1-7, at the time of the instant proceeding, provided that, in such circumstances, the child shall be held "* * * for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult." Thus, petitioner was before the Superior Court to be tried and, if guilty, sentenced as if he were an adult. *Knott* v. *Langlois,* 102 R. I. 517, 231 A.2d 767 (1967).

We conclude that in the instant case the fact that the petitioner had a juvenile record was relevant information about his social history and pertinent information for the purpose of aiding the trial justice in considering the sentence to be imposed.[3]

The petition for habeas corpus is denied and dismissed, the writ heretofore issued is quashed, and the records certified are ordered returned to the Superior Court.

---

[3]Michigan and Illinois prohibit such use of a juvenile record, but the statutes in those states are different from §14-1-40 in that they provide that the disposition of a juvenile offender may not be used "for any purpose whatever." *People* v. *McFarlin,* 41 Mich.App. 116, 199 N.W.2d 684 (1972); *People* v. *Crable,* 80 Ill.App.2d 243, 225 N.E.2d 76 (1967). The Michigan court, in fact, distinguished its result from the cases which permit presentence consideration of a defendant's juvenile record on the basis of the difference in its statute.

Mr. Justice Joslin did not participate.

*Abedon, Michaelson, Stanzler & Biener, Milton Stanzler,* for petitioner.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for respondent.