PEOPLE v McFARLIN
PEOPLE v RABB
PEOPLE v LOOMIS

OPINION OF THE COURT

1. STATUTES—CONSTRUCTION.

   Where the language of a statute is of doubtful meaning, a reasonable construction must be given, looking to the purpose subserved thereby.

2. STATUTES—PURPOSE—CONSTRUCTION.

   The occasion and necessity of a statute are matters of judicial concern, and its purpose should be effected if possible.

3. STATUTES—CONSTRUCTION.

   In construing a statute, its spirit and purpose should prevail over its strict letter; injustice in its application should be prevented, and absurd consequences avoided.

4. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT.

   The Supreme Court may, in the construction of an ambiguous statute, look to the result of the construction to aid it in determining legislative intent.

5. CRIMINAL LAW—SENTENCES—JUVENILE RECORD.

   The clear weight of judicial authority is in favor of full disclosure of the defendant's past, including his juvenile court history, to the sentencing judge.

6. STATUTES—JUVENILE RECORD—LEGISLATIVE INTENT—SENTENCES—PRESENTENCE REPORT.

   Whatever was meant by the language chosen in 1905 to express the limitation on the use of an offender's juvenile record in subsequent proceedings, the Legislature was not then thinking

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 50 Am Jur, Statutes §§ 225, 382.

[5–7, 9–14] 47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 4, 8.

[8] 21 Am Jur 2d, Criminal Law §§ 540, 592, 614.

about the present practice of probation officers assembling comprehensive information to assist the judge in his sentencing decision (1905 PA 312).

7. CRIMINAL LAW—SENTENCES—LEGISLATIVE INTENT—PRESENTENCE REPORT—JUVENILE RECORD.

Reallocation of the task of assembling the requisite information, the greater emphasis placed by the 1913 and 1931 probation acts on presentence reports, especially the 1913 provision requiring inquiry concerning the antecedents, character and circumstances of the offender, reinforce the view that the Legislature did not intend to cut off from the sentencing judge's view information concerning the history of juvenile misconduct and offenses (1913 PA 105; 1931 PA 308).

8. CRIMINAL LAW—SENTENCES.

The modern view of sentencing is that the sentence should be tailored to the particular circumstances of the case and the offender in an effort to balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential, and this view of sentencing is the present policy of the State of Michigan; a judge needs complete information to set a proper individualized sentence.

9. CRIMINAL LAW—PRESENTENCE REPORT—JUVENILE RECORD—SENTENCES.

The presentence report should include information concerning juvenile history, including dispositions by a juvenile court, and it is proper to consider this information as a factor in sentencing an adult offender (MCLA 712A.23).

10. CRIMINAL LAW—SENTENCES—JUVENILE HISTORY—PRESENTENCE REPORT—DISCLOSURE.

A juvenile offender may not vigorously defend a doubtful charge; therefore, if an adult offender's juvenile history is a factor that may be considered in sentencing him, he should be given an opportunity to respond to the report; this legitimate need can best be met by requiring disclosure of presentence reports to defendants with an opportunity for them to rebut or add to the information contained in the report.

SEPARATE OPINION

M. S. COLEMAN, J.

See headnotes 1–9.

11. APPEAL AND ERROR—CRIMINAL LAW—PRESENTENCE REPORTS.

*Discussion of whether or not presentence reports should be made available to defendants and their lawyers prior to sentencing is not essential to the decision reached in a case where that issue is not before the Michigan Supreme Court and, not having been raised by either party, has not been briefed or argued.*

12. CRIMINAL LAW—PRESENTENCE REPORTS—COURT RULES.

*Proposed court rule requiring disclosure of presentence reports to defendants and their lawyers was not appropriately before the Michigan Supreme Court, and there was a lack of wisdom in rushing it in through the back door, as it were, before adequate current consideration could be given to such a dramatic change; "immediate action" was not necessary.*

13. INFANTS—JUVENILE REPORTS—PRESENTENCE REPORTS.

*Juvenile reports are subjected to strict rules and practices and must stand tests of accuracy above and beyond present requirements for adult presentence reports.*

14. CRIMINAL LAW—PRESENTENCE REPORTS.

*It seems lacking in judicial restraint and wisdom to cavalierly alter present procedures on presentence reports, in the absence of (1) an accurate basis for the conclusion reached, (2) opportunities to hear all sides of the question and (3) a due consideration of consequences—good and bad.*

Appeal from Court of Appeals, Division 2, Lesinski, C. J., and Bronson and Targonski, JJ., reversing and remanding Genesee, John W. Baker, J. Submitted April 5, 1973. (No. 7 April Term 1973, Docket No. 54,201.) Decided June 28, 1973.

41 Mich App 116 reversed.

Gary M. McFarlin was convicted, on his plea of guilty, of larceny in a building. Defendant appealed to the Court of Appeals. Reversed and remanded for resentencing. The people appeal. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief,

Appellate Division, and *Joel B. Saxe,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Richard S. McMillin),* for defendant on appeal.

Appeal from Court of Appeals, Division 2, Lesinski, C. J., and Bronson and Targonski, JJ., reversing and remanding Genesee, Anthony J. Mansour, J. Submitted April 5, 1973. (No. 8 April Term 1973, Docket No. 54,211.) Decided June 28, 1973.

James L. Rabb was convicted, on his plea of guilty, of attempted breaking and entering a business place with intent to commit larceny. Defendant appealed to the Court of Appeals. Reversed and remanded for resentencing. The people appeal. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Joel B. Saxe,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Richard S. McMillin),* for defendant on appeal.

Appeal from Court of Appeals, Division 2, Quinn, P. J., and Fitzgerald and Van Valkenburg, JJ., affirming Washtenaw, Ross W. Campbell, J. Submitted April 5, 1973. (No. 9 April Term 1973, Docket No. 54,197.) Decided June 28, 1973.

David K. Loomis was convicted, on his plea of guilty, of breaking and entering a business place with intent to commit larceny. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,*

Prosecuting Attorney, and *Leonard J. Kowalski,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Richard S. McMillin),* for defendant on appeal.

Levin, J. In these cases, consolidated on appeal, the defendants were convicted of felonies and sentenced to serve terms in prison. In the leading *McFarlin* case *(People v McFarlin,* 41 Mich App 116 [1972]) a panel of the Court of Appeals, differing with an earlier panel's decision in *People v Coleman,* 19 Mich App 250 (1969), held that a judge may not consider an adult offender's juvenile offense record as a factor in imposing sentence upon him, and remanded McFarlin for resentencing. The other consolidated cases concern the same issue.

We are of the opinion that the *Coleman* decision was correct and, therefore, reverse *McFarlin* and dispose of the other consolidated cases accordingly.

At issue is the restriction on the use of an offender's juvenile record found in the chapter of the Probate Code concerning juveniles and the juvenile division of the probate court:

"A disposition of any child under this chapter, or any evidence given in such case, shall not in any civil, criminal or any other cause or proceeding whatever in any court, be lawful or proper evidence against such child for any purpose whatever, except in subsequent cases against the same child under this chapter." MCLA 712A.23; MSA 27.3178(598.23).

The defendants stress the words prohibiting use of a juvenile record "for any purpose whatever," while the people contend that a judge who takes a juvenile record into consideration at sentencing is not using it as "evidence".

This language, enacted in 1905 as part of Michigan's first juvenile court act,[1] has been carried forward to the present without substantive change.[2]

Separate courts for juveniles were established in a number of states at the turn of the century. Illinois, in 1899, was the first to act.[3] Other states followed before Michigan acted, but only two, California and Colorado,[4] restricted the use of juvenile records in other proceedings. Michigan adopted the language of the Colorado act.[5]

---

[1] "Any child committing any of the acts herein mentioned shall be deemed a juvenile delinquent person and shall be proceeded against as such in the manner hereinafter provided. A disposition of any child under this chapter, or any evidence given in such cause, shall not in any civil, criminal, or other cause or proceeding whatever in any court, be lawful or proper evidence against such child for any purpose whatever excepting in subsequent cases against the same child under this act." 1905 PA 312, § 1.

The 1905 act, held unconstitutional in *Hunt v Wayne Circuit Judges,* 142 Mich 93 (1905), was reenacted in substantially the same form with the constitutional defects remedied as 1907 PA 325 and 1907 PA (1st Ex Sess) 6. The compiler's note to 1915 CL 2011 states: "Former Acts 312 of 1905, and 325 of 1907, are undoubtedly superseded by this act (1907 PA [1st Ex Sess] 6). Act 325 of 1907 was expressly repealed 1915, p 407, act 240, Eff. Aug 24, Compilers' Section 69."

[2] We attach no significance, one way or another, to the reenactment of the 1905 limitation on the use of juvenile records in subsequent codifications with only stylistic changes. *See* MCLA 8.3u; MSA 2.212(21).

[3] *See* Ill Laws 1899, p 131, approved April 21, 1899.

[4] California: "No record of, or testimony concerning any proceeding against any child under this act shall be admissible as evidence against such child in any other court or proceeding, except in proceedings under this act." Cal Public Acts 1903, ch XLIII, § 12, Feb 26, 1903.

Colorado: "Any child committing any of the acts herein mentioned shall be deemed a juvenile delinquent person, and shall be proceeded against as such in the manner hereinafter provided. A disposition of any child under this act, or any evidence given in such cause, shall not in any civil, criminal, or other cause or proceeding whatever in any court be lawful or proper evidence against such child for any purpose whatever, excepting in subsequent cases against the same child under this act." 1903 Colo Sess Laws, March 7, 1903. § 1.

[5] See fns 1 and 4.

Although provisions restricting the use of a juvenile record were soon adopted in well over half the states, we have neither been directed to, nor have we been able to find, any contemporaneous discussion or interpretation of these provisions. Thus, now over 65 years after these provisions were first enacted, after everyone conversant with the "legislative intent" is gone, we seek to determine the proper construction of this restriction.

I

This Court has said that where "language is of doubtful meaning, a reasonable construction must be given, looking to the purpose subserved thereby. Its occasion and necessity are matters of judicial concern, and its purpose should be effected if possible. Its spirit and purpose should prevail over its strict letter. Injustice in its application should be prevented, and absurd consequences avoided." (Citations omitted.) *Webster v Rotary Electric Steel Co*, 321 Mich 526, 531 (1948).

Few words have a "content so intrinsic" that their meaning does not become doubtful in the context of a particular question. *Wyandotte Savings Bank v State Banking Commissioner*, 347 Mich 33, 40 (1956). G. A. Endlich, in his treatise on statutory construction, said:

"Language is rarely so free from ambiguity as to be incapable of being used in more than one sense; and to adhere rigidly to its literal and primary meaning in all cases would be to miss its real meaning in many. If a literal meaning had been given to the laws which forbade a layman to lay hands on a priest, and punished all who drew blood in the street, the layman who wounded a priest with a weapon would not have falled within the prohibition, and the surgeon who bled a person in the street to save his life, would have been

liable to punishment. On a literal construction of his
promise, Mahomed II.'s sawing the Venetian governor's
body in two, was no breach of his engagement to spare
his head; nor Tamerlane's burying alive a garrison, a
violation of his pledge to shed no blood. On a literal
construction, Paches, after inducing the defender of
Notium to a parley under a promise to replace him
safely in the citadel, claimed to be within his engage-
ment when he detained his foe until the place was
captured, and put him to death after having conducted
him back to it; and the Earl of Argyll fulfilled in the
same spirit his promise to the laird of Glenstane, that if
he would surrender he would see him safe to England;
for he hanged him only after having taken him across
the Tweed to the English bank." Endlich, Interpretation
of Statutes (Linn & Company ed 1888), § 25, pp 33–34.

The sharp division in the Court of Appeals on
this issue in the literally dozens of cases decided
since these consolidated cases were decided may
impart that the language expressing the restric-
tion on the use of juvenile record is subject to
more than one construction.

We seek to ascertain and give effect to the
intention of the Legislature. *Grand Rapids v
Crocker,* 219 Mich 178, 182 (1922). But, as Karl
Llewellyn observed, only infrequently "a legisla-
tive intent with some concrete reality can be
uncovered in circumstance or legislative history.
For the rest, the court's work is not to *find,* any
more than it is with case law. It is to *do,* responsi-
bly, fittingly, intelligently, with and within the
given frame." (Emphasis by author.) Llewellyn,
The Common Law Tradition, Deciding Appeals, p
382. Much the same point was made in language
quoted approvingly in *Wyandotte Savings Bank v
State Banking Commissioner, supra,* pp 40–41:
" ' "the intention is to be taken or presumed,
according to what is consonant to reason and good

discretion." ' " 1 Kent's Commentaries (14th ed), p 462.

The teleological approach has great appeal to judges who recognize that law should make sense to the people who must live with it. In *Magnuson v Kent County Board of Canvassers,* 370 Mich 649, 657 (1963), this Court said: "We may in the construction of an ambiguous statute look to the result of the construction to aid us in determining legislative intent."

## II

In many states the restriction, worded like ours, states that an offender's juvenile record shall not be admissible or usable against him in subsequent proceedings in other courts "as evidence". Michigan, along with a few other states, adds emphatically, "for any purpose whatever". In other states the limiting words "as evidence" are not used. In still others, the legislatures have added that juvenile court adjudication shall not be deemed to be a conviction. There are still other variations.[6]

Although these comparable provisions are almost as venerable as Michigan's, only recently have appellate courts considered whether these provisions preclude a judge from considering an adult offender's juvenile record as a factor in imposing sentence. We have not been cited to, nor have we been able to uncover, any case where the issue was raised before 1958.

---

[6] *See* Wigmore on Evidence (3d ed), § 196, p 673, fn 5.

In two states, South Carolina and Oregon, the statute, specifically addressing the question whether a sentencing judge should have access to the juvenile court history of the defendant, expressly permits it. *See* SC Acts 1936, May 4, 1936, No 809, § 36; Or Rev Stat (vol 3) 419.567(3)(a). It appears that the Oregon statute may have been passed during the pendency of the appeal in *Mitchell v Gladden,* 229 Or 192; 366 P2d 907 (1961). *See* fn 7, *infra.*

In that year, the Pennsylvania Supreme Court held that the Pennsylvania statute ("[t]he disposition of a child or any evidence given in a juvenile court shall not be admissible as evidence against the child in any case or proceeding in any other court") does not bar a sentencing judge from considering an adult defendant's juvenile record. *Commonwealth v Myers*, 393 Pa 224; 144 A2d 367 (1958). In subsequent cases, the Delaware, Wisconsin, Alaska, Arizona and Oregon Supreme Courts and the New Jersey Superior Court agreed with this construction.[7]

The Alaska Court reasoned:

"A judge, of all persons, should be most cognizant of the existence and meaning of AS 47.10.080(g), and of the fact that under that statute a juvenile offender may not be considered a criminal even though he has suffered a criminal conviction. But the judge cannot simply ignore that phase of appellant's life—before he reached 18 years of age—as though it did not exist—

---

[7] *Massey v State*, 256 A2d 271 (Del, 1969). The Delaware statute has the same language found in Michigan's provision.

*Deja v State*, 43 Wis 2d 488; 168 NW2d 856 (1969). The Wisconsin statute reads "admissible as evidence."

*Berfield v State*, 458 P2d 1008 (Alas, 1969). Alaska has an "admissible as evidence" statute.

*Arizona v Fierro*, 101 Ariz 118; 416 P2d 551 (1966). Arizona has an "admissible as evidence" statute.

*Mitchell v Gladden, supra.* Before it was amended *(see* fn 6, *supra),* the Oregon statute provided that the record of disposition is not competent evidence against the child. The Oregon Supreme Court focused on the language "against such child," reasoning:

"There is no proscription against the use of such evidence against a person after he has reached his majority. The obvious purpose of the statute is to protect a child from the stigma of his wrongdoing in his effort to rehabilitate himself. When he is no longer a child and when it is demonstrated by his conviction that he has not rehabilitated himself, there is no longer any reason to preclude the use of the evidence in the juvenile proceedings for the purpose of fixing his sentence."

*State v Jones*, 91 NJ Super 67; 219 A2d 193 (1966). New Jersey also has an "admissible as evidence" statute.

particularly when appellant was only 21 years old when sentenced. The judge is not required to operate in a vacuum. In sentencing a 21 year old person, the life, characteristics, and background behavior of that person prior to reaching the age of 18 years might be highly relevant. It should be noted that the judge cannot consider a juvenile offense as a criminal conviction for the purpose of prescribing a mandatory sentence. But that was not done in this case. The judge's consideration of factors relating to appellant's life, characteristics, background and behavior prior to reaching the age of 18 years does not mean that he considered appellant a criminal or that he was using the juvenile offenses as criminal convictions in determining the sentence to impose." *Berfield v State,* 458 P2d 1008, 1011–1012 (Alas, 1969).

An Illinois intermediate appellate court,[8] on the other hand, agreed with the construction adopted by our Court of Appeals in *McFarlin.*

These decisions from other states are certainly not controlling; indeed, only the Delaware and Illinois statutes contain the same language found in the Michigan statute. Nevertheless, they reveal that the clear weight of judicial authority is in favor of full disclosure of the defendant's past, including his juvenile court history, to the sentencing judge.

## III

These statutory restrictions on the use of a juvenile record were adopted at a time when the emphasis in sentencing was more on the crime

---

[8] *People v Crable,* 80 Ill App 2d 243; 255 NE2d 76 (1967). The Illinois statute contains the same language found in Michigan's provision. The Illinois Court did not explain how it reached its conclusion. It simply said that the judge erred in taking into consideration the defendant's stay "at St. Charles", citing and quoting the statute.

than on the offender.[9] Indeterminate sentencing, recently authorized by a vote of the people,[10] was new in Michigan.

Michigan's 1903 indeterminate sentence act did not advert to the history of the offender.[11] The 1905 indeterminate sentence act did provide that before or at the time of passing sentence the judge should ascertain "the causes of the criminal character or conduct of such convict, which facts, and such other facts as shall appear to be pertinent in the case, he shall cause to be entered upon the minutes of the court."[12] But it is unclear whether this duty was imposed on the sentencing judge to focus his attention on the offender (as well as the crime) or to serve some other purpose, such as providing guidance for the Governor and the Advisory Board in the Matter of Pardons in exercising the parole power.

Another 1903 act authorized judges to place convicted persons on probation under the supervision of probation officers. The act also required a probation officer, if directed by the court, to "inquire into the nature of any criminal case" and permitted him to recommend probation.[13] The 1903 act did not in terms oblige a probation officer to

[9] *Cf. Williams v New York,* 337 US 241, 247; 69 S Ct 1079; 93 L Ed 1337 (1949).

[10] See constitutional amendment authorizing the Legislature to provide by law for indeterminate sentences adopted at the November election of 1902, added as § 47 to art 4 of the 1908 Constitution. *See* 1903 PA, p 452.

[11] *See* 1903 PA 136.

[12] 1905 PA 184, § 1. Both the requirement that the judge make such inquiry of a convicted person and the restriction on the use of juvenile records were enacted at the very same Legislature. The requirement that the judge make such inquiry (1905 PA 184, § 1) was approved by the Governor on June 7, 1905, and the restriction on the use of juvenile record (1905 PA 312, § 1) was approved on June 17, 1905.

[13] 1903 PA 91.

prepare a written report for the judge. It was not until 1913 that the officer was expressly required to inquire beyond the "nature of the criminal case" into the background of the offender and to report to the judge in writing.[14]

The 1913 probation act provided that, when so directed by the court, the probation officer "shall inquire into the antecedents, character and circumstances of any person or persons accused within the jurisdiction of such court, and shall report thereon in writing to such court or magistrate".[15] Presentence investigation and report did not become mandatory for felony cases until 1931 (1931 PA 308) and is still optional in sentencing for misdemeanors. The presently-governing language, adopted in 1931, provides:

> "Before sentencing any person charged with a felony, and, if directed by the court in any other case where any person is charged with a misdemeanor within the jurisdiction of the court, the probation officer shall inquire into the antecedents, character and circumstances of such person or persons and shall report thereon in writing to such court or magistrate." MCLA 771.14; MSA 28.1144.

In the light of this history, it is apparent that whatever was meant by the language chosen in 1905 to express the limitation on the use of an offender's juvenile record in subsequent proceedings, the Legislature was not thinking about the present practice of probation officers assembling comprehensive information to assist the judge in his sentencing decision.

## IV

In 1905 judges made their own presentence in-

---

[14] 1905 PA 32; 1909 PA 124; 1913 PA 105; 1915 CL 2029, *et seq.*
[15] 1913 PA 105, § 14; 1915 CL 2042.

quiries. The earlier-mentioned 1905 indeterminate sentence act required the judge to examine the offender under oath concerning "the causes of the criminal character or conduct". The judge was, indeed, also to consider other evidence, but it is apparent that the first obligation was to examine the offender. The inherent limitations of time and energy of a judge working with limited staff meant that his inquiry of the offender was, in many cases, his primary, and perhaps his only, source of information. This inquiry would naturally bring to the judge's attention instances of earlier misconduct and offenses, and any resulting judicial proceedings, juvenile as well as adult. The restriction on the use of the juvenile court record of "dispositions" would not have cut off inquiry of the offender himself concerning misconduct and offenses committed during the years he would have been subject to the jurisdiction of the juvenile court.

Although the language of the 1905 act obliging the judge to make his own inquiries and to enter the causes of the criminal character or conduct in the minutes of the court has been carried forward as part of the present indeterminate sentence law (see MCLA 769.8; MSA 28.1080), it is the probation officer who now assembles the requisite information. We perceive the reallocation of this task, along with the 1913 and 1931 probation acts' greater emphasis on presentence reports, especially the 1913 provision requiring inquiry concerning the antecedents, character and circumstances of the offender, as reinforcing the view that the Legislature did not intend to cut off from the judge's view information concerning juvenile misconduct and offenses.

The Court of Appeals in *McFarlin* stressed the difference between juvenile and adult proceedings

and concluded that it would be unsound to allow a sentencing judge to rely on a record "compiled by a procedure inapposite to our criminal justice system." *People v McFarlin, supra,* p 126. This argument from policy cuts both ways.

In 1905, when the limitation on the use of a juvenile record was first enacted, juvenile courts were regarded as a more enlightened forum for the adjudication of offenses charged against a young offender. In that context, the Legislature could not have looked upon the restriction on the use of a juvenile record as a means of protecting juveniles from use against them of convictions obtained by an inferior process. The Due Process and Equal Protection concerns expressed by the United States Supreme Court and other courts first in the case of adults, and, following the added protection provided adult offenders, the increased attention given juvenile court procedures, are relatively recent developments.

Moreover, this argument ignores the real protections, including the right to a jury trial and a qualified right to counsel, accorded juvenile defendants in Michigan since juvenile courts were first established in this state.[16] It also ignores the

---

[16] In *McKeiver v Pennsylvania,* 403 US 528; 91 S Ct 1976; 29 L Ed 2d 647 (1971), the United States Supreme Court held that the Due Process Clause does not require a jury trial in juvenile proceedings. However, § 2 of the 1905 and of both 1907 juvenile court acts *(see* fn 1) provided that any interested person may demand a jury of 6 and § 3 of the 1907 Acts provided that the court may in any such case appoint counsel to appear and defend on behalf of any such child. In 1939, it was provided that "in case such child or his or her parents desire counsel and are unable to procure same, the court may appoint counsel to conduct the defense." 1939 PA 288, ch xii, § 12. In 1944, the words "in the event" were substituted for the words "in case" and the last clause was changed to read, "the court in its discretion may appoint counsel to represent the child." 1944 PA (1st Ex Sess) 54. See MCLA 712A.17; MSA 27.3178(598.17). See, also, Juvenile Court Rules of 1969 which spell out procedural safeguards in proceedings against juveniles.

True, until *In re Gault,* 387 US 1; 87 S Ct 1428; 18 L Ed 2d 527

use to which the juvenile history will be put. While a jury might well be misled if a juvenile record could be used to impeach credibility and an adult defendant surely would be penalized if his juvenile record were used to invoke a recidivist statute, bringing an adult defendant's juvenile record to the judge's attention at the time of sentencing frequently will but supplement a derogatory report of which the judge would otherwise become aware.

A probation officer who questions a convicted adult offender awaiting sentencing, his acquaintances, members of his family, the victims of his offenses, witnesses and others, is likely to develop information concerning prior misconduct and offenses claimed to have been committed by the offender as a juvenile. Are we then to bar the sentencing judge from learning whether a charge was actually prosecuted, the offender actually convicted, the character of the sentence imposed and the result of any effort to rehabilitate the offender? If we keep this information from the judge, he would still know about the alleged offense. Yet lacking the benefit of the juvenile judge's evaluation, he would be left to surmise the outcome.

Those who would prohibit consideration of an offender's juvenile record at sentencing recognize that the restriction does not preclude a judge from learning of the offender's juvenile background. As

---

(1967), a juvenile court was not obliged to provide counsel. The statute provided, as above set forth, that, if the child or his parents desire but are unable to procure counsel, the court "in its discretion may appoint counsel". Some juvenile defendants may, indeed, have been unaware of the right to request counsel. Others may have been aware of the right but failed to exercise it. In other cases, the court may have refused a request for counsel. These circumstances may affect the usability or weight to be given to specific dispositions in adult sentencing but are not a good reason for excluding use of juvenile records where such circumstances are not present.

stated by the author of the *McFarlin* opinion, in a subsequent opinion:

"The statutory restraint of MCLA 712A.23; MSA 27.3178 (598.23) on the use of a juvenile record does not preclude the development and presentation of a report which indicates the conduct, character and behavior of the defendant during the period he is within the jurisdictional age of juvenile authorities. The statute barring the use of juvenile records as evidence 'for any purpose whatsoever' prohibits a sentencing judge from relying on the use of a juvenile record for the result of the juvenile court adjudicative process." *People v Chappell,* 44 Mich App 204, 208–209 (1972).[17]

If the judge is not to be shielded from all knowledge of the offender's juvenile history, we see no sound reason why the official record of his court history alone should be kept from the judge, why the probation officer and the judge should be required to do indirectly—by inquiry of the accused, his acquaintances, friends, family, victims and witnesses of his depredations, and the like—what can be done directly with greater efficiency and accuracy.

In this connection it is noteworthy that, by act of the Legislature, the state department of social welfare and the probate courts are obliged to furnish the department of corrections, on request, information concerning a person having a record as a juvenile probationer.[18] Presumably this information may be used in reaching a parole release decision under the indeterminate sentencing act. It

---

[17] Similarly, *see People v Meadows,* 46 Mich App 741 (1973): "The statute does not preclude a sentencing judge from enhancing the punishment of a defendant based on the conduct, behavior and antecedents of such a person as a minor so long as the information is developed without recourse to dispositions evidenced by the juvenile record."

[18] *See* MCLA 791.228; MSA 28.2298.

would be incongruous to deny like information to the judge who sets the minimum sentence and sometimes the maximum sentence under that very same act.

If we were to prohibit the use of a juvenile record at sentencing, many offenders would waive this "privilege". A young adult offender who does not have a juvenile record would so inform the judge or probation officer and authorize a check of juvenile court records to verify that his record was clear. Offenders who have a history of juvenile misconduct resolved in their favor by a referee or juvenile judge would waive. In consequence a negative inference might be drawn against those who did not waive.

If—in an effort to enforce an absolute restriction on the use of juvenile records—we were to bar all waivers of the restriction and prohibit any consideration by the sentencing judge of juvenile history, the best and the worst sentencing risks might be indistinguishable. A judge hesitant to take risks, uncertain whether a young adult offender is a first offender, might sentence him to prison when, with complete information, he would place him on probation or sentence him under the Holmes Act.

The modern view of sentencing is that the sentence should be tailored to the particular circumstances of the case and the offender in an effort to balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential. While the resources allocated for rehabilitation may be inadequate and some persons question whether rehabilitation can be achieved in the prison setting, this view of sentencing is the present policy of the state. A judge needs complete information to set a proper individualized sentence. A defendant's juvenile court history may

reveal a pattern of lawbreaking and his response to previous rehabilitative efforts. This, together with information concerning underlying social or family difficulties, and a host of other facts are essential to an informed sentencing decision, especially if the offender is a young adult.

Some adult offenders may indeed serve longer prison sentences because of information developed from the official juvenile court record. But others, because the presentence report is a complete and reliable chronicle, may serve shorter sentences or not be imprisoned at all. Such differentiation in sentencing predicated on differences in the backgrounds of offenders is contemplated by the indeterminate sentencing and probation acts. The objectives of those acts and of the restriction on the use of a juvenile record are entirely reconcilable.

We conclude that the presentence report should include information concerning juvenile history, including a disposition by a juvenile court, and that it is proper to consider this information as a factor in sentencing an adult offender.

## V

We recognize, as has been urged upon us, that a presentence report of a defendant's juvenile court history may be misleading, incomplete or inaccurate. Yet, under present practice, the defendant might not see the presentence report or have an opportunity to rebut any derogatory information. We also recognize that, for a variety of reasons, a juvenile offender may not vigorously defend a doubtful charge. Therefore, if an adult offender's juvenile history is a factor that may be considered in sentencing him, he should be given an opportunity to respond to the report.

This legitimate need can best be met, not by reducing the information available to the sentencing judge, but by requiring disclosure of presentence reports to defendants and affording them an opportunity to rebut or add to the information contained in the report.[19]

Today, after consideration of comments from Bench and Bar, we adopted an amendment to the court rules implementing the proposed rule set forth in *People v Malkowski,* 385 Mich 244, 250, n 5 (1971). The new rule provides for disclosure of the presentence report to the defendant as proposed in § 4.4 of the American Bar Association, Minimum Standards for Criminal Justice, *Standards Relating to Sentencing Alternatives and Procedures.*

The judgments of the Court of Appeals are reversed in *McFarlin* and *Rabb* and affirmed in *Loomis.*

T. M. KAVANAGH, C. J., and T. E. BRENNAN, SWAINSON, and WILLIAMS, JJ., concurred with LEVIN, J.

T. G. KAVANAGH, J., concurred in the result.

M. S. COLEMAN, J. *(concurring in part, dissenting in part).* I concur in the opinion of Justice LEVIN through section IV and dissent as to section V.

The issue raised in section V is whether or not presentence reports should be made available to defendants and their lawyers prior to sentencing. The question is not confined to juvenile records, but includes them.

---

[19] The President's Commission on Law Enforcement and Administration of Justice has recommended full disclosure of presentence reports. *See The Challenge of Crime in a Free Society,* p 144 (1967).

1.

The issue in section V is not before the Court and, not having been raised by either party, has not been briefed or argued. The discussion is not essential to the decision reached.

Section V addresses itself to a highly limiting although imprecise proposed court rule. The general result would be further to limit judicial discretion and make mandatory the inspection of all adult presentence reports by defendant's attorney *and* the defendant. Background material and recommendations arrived from the Supreme Court staff only today, which is two days prior to the time set for signing this opinion. Prompt consideration of *McFarlin, Rabb* and *Loomis* is valid because of the number of cases backed up awaiting the decision as to the issue of whether a juvenile record can be considered in an adult's presentence report. The relevant portion of the opinion (through section IV) resulted after extensive briefing, oral argument and Court discussion, so that Justice LEVIN's thoughtful opinion to that point is ready for agreement or disagreement.

This is not at all true with the extra section. Some history is relevant for at least two reasons: (1) I believe the matter of the rule not appropriately before the Court, and (2) there is a lack of wisdom in rushing it in through the back door, as it were, before adequate current consideration can be given to such a dramatic change.

Supreme Court Administrative Rule 933 provides:

"Amendments to these rules shall be made by the adoption of an entire new or amended rule or sub-rule by the Supreme Court after giving reasonable notice to the Secretary of the State Bar of Michigan and to the

Court Administrator of the proposal and of the manner and means by which comments thereon may be made. The Secretary of the State Bar shall notify the appropriate committees or sections of the State Bar of the proposed amendments and of the manner and means by which the comments may be made. The Court Administrator shall notify the appropriate committees of the Judicial Conference of the proposed amendments and of the manner and means by which the comments may be made. Upon a finding of a need for immediate action, the Court may dispense with the notice requirements of this rule."

I suggest that "immediate action" is not necessary as to section V with the rule incorporated.

The material received today reveals that such a proposed rule was published in the State Bar Journal in 1971 and that the resultant comments reported to the Court on November 22, 1971, were so overwhelmingly negative that the matter was eventually tabled on March 29, 1972, more than a year before the matter comes before the new Court, ostensibly from "the table". We proceed by Robert's Rules of Order. The procedure which the Court followed is suspect under those rules.

However, disregarding rules of procedure, there is a more fundamental reason for careful consideration of the proposed rule incorporated by section V.

The comments which resulted from the 1971 publication were, in general, critical or questioning of all or parts of the proposal. It also should be noted that a Federal system survey of 689 judges of Federal Courts of Appeal, Federal district courts and Federal probation officers revealed that 91% opposed compulsory disclosure of presentence reports. After a *three year study* by the Judicial Conference, the United States Supreme Court ap-

proved Federal Rule of Criminal Procedure
32(c)(2), which is as follows:

"The report of the presentence investigation shall
contain any prior criminal record of the defendant and
such information about his characteristics, his financial
condition and the circumstances affecting his behavior
as may be helpful in imposing sentence or in granting
probation or in the correctional treatment of the de-
fendant, and such other information as may be required
by the court. The court before imposing sentence may
disclose to the defendant or his counsel all or part of
the material contained in the report of the presentence
investigation and afford an opportunity to the defend-
ant or his counsel to comment thereon. Any material
disclosed to the defendant or his counsel shall also be
disclosed to the attorney for the government."

Some of the 1971 comments gleaned from a 22
page condensed report, carry a common thread of
concerns worth exploring, such as:

The purpose is commendable, the vehicle is not.
As worded, the rule would impose immense appellate
problems, not the least of which would concern efforts
to interpret the last sentence:
"The action of the court in excepting information
from disclosures shall be subject to appellate review."
Would the Court of Appeals have the right to alter a
sentence which is within statutory limits? If remanded
to a trial judge, what problems arise in a one-man
circuit?
The mandatory rule would encourage "bootlegging"
of information and a lessening of reliability.
The sentencing process would take on the aspects of
another trial. (Query: Would the defendant have the
right to subpoena witnesses to refute "derogatory infor-
mation"?)
If the judge must decide what is derogatory and then
whether it is to be excluded, giving reasons on the
record for such exclusion, would not the purpose of that
provision be defeated?

When courts are the objects of criticism because of the complexity of criminal proceedings, would not another complex rule providing the already convicted criminal with one more means of obstruction and delay give even more credibility to the charge that a criminal conviction is never final excepting upon dismissal or death?

Would the person convicted then have a further right to *Miranda* warnings upon inquiries of the probation officer or judge?

Would he or she have the right to further jury determination of disputed facts in the report?

Because it is the general practice now to discuss this report with the lawyer, and/or the defendant, would the defendant be helped or harmed by the anticipated "bland" report from which a judge would gain only a partial picture?

These and many more concerns were expressed in 1971. The welfare of the defendant is of great importance and the need of the judge to know all that is reliable is inherent in any rehabilitative thrust.

In order to avoid mass confusion, unestimated expense and possible harm both to the defendant and the judicial system, it is my belief that this rule deserves more than perfunctory consideration.

Further, there is merit in the statement ending Justice T. E. Brennan's concurring opinion in *People v Anderson,* 389 Mich 155, 221 (1973):

"But, if our opinions are to be of any value as precedent, they should be limited to the enunciation of those rules of law which are decisional, related to the facts in the case before us, and supportive of the result arrived at."

2.

I take issue with the premise upon which the conclusion in section V is based, to-wit:

"We recognize, as has been urged upon us, that the juvenile court history of the defendant contained in the presentence report may be misleading, incomplete or inaccurate. Yet, under present practice, the defendant might not see the presentence report or have an opportunity to rebut any derogatory information. We also recognize that, for a variety of reasons, a juvenile offender may not vigorously defend a doubtful charge."

No criteria for such assumptions are given and, I suggest, there are none to substantiate such conclusions.

First, the juvenile officers compiling the reports (comparable to presentence investigations) are highly trained people with the same educational requirements as adult probation officers and schooled in the importance of accuracy.

Second, it is the generally accepted policy of probate and juvenile judges to make these reports available to all lawyers involved. Whether there is or is not a lawyer representing the child, the judge (or referee in some cases) discusses the report and takes testimony on the record at the time of each disposition. Indeed, this hearing is limited by Juvenile Court Rules 7.2(e)(4), 8.1(b) and 8.3(b).

In essence, juvenile reports are subjected to strict rules and practices and must stand tests of accuracy above and beyond present requirements for adult presentence reports.

Next, it would be a rare judge indeed who might overstep those tightly proscribed limits as to proof of "charges"—even allowing for human frailty in this, as in all facets of life. Certainly, no such infirm generality as stated should be the basis for an important decision.

In the absence of (1) an accurate basis for the conclusion reached, (2) opportunities to hear all sides of the question and (3) a due consideration of

consequences—good and bad—it seems lacking in judicial restraint and wisdom to take this route to cavalierly alter present procedures.

ADDENDUM:

A revision in the majority opinion was this day received. It was confined primarily to the first sentence in section V and it is apparent upon the reading of that opinion and this opinion, dissenting is to that section. The basic reasoning remains the same, so in the interest of time, this concurrence in part and dissent in part remains as originally written.