PEOPLE v LINE

Docket No. 81247. Submitted July 9, 1985, at Grand Rapids.—Decided
September 4, 1985. Leave to appeal applied for.

Dale A. Line was convicted, on his plea of nolo contendere, of two
counts of assault with intent to commit great bodily harm less
than murder, Kalamazoo Circuit Court, Richard R. Lamb, J.,
and was sentenced to from six to ten years in prison. Defendant
appealed. *Held:*

1. The sentence did not shock the conscience of the Court of
Appeals.

2. The trial court did not err in considering a prior conviction
of defendant which was more than ten years old.

Affirmed.

J. C. RAVITZ, J., concurred, but wrote separately to urge
further development of appellate review of sentencing.

OPINION OF THE COURT

1. APPEAL — SENTENCING — SENTENCING GUIDELINES.

Departures from the Sentencing Guidelines are to be expected
and, where the sentencing court articulates permissible reasons
in support of its decision to depart from the guidelines, a
reviewing court should not afford relief unless the sentence
imposed shocks the conscience of the reviewing court.

2. CRIMINAL LAW — SENTENCING — PRIOR CONVICTIONS.

Consideration by a sentencing court of a prior conviction which is
more than 10 years old is not improper.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *James J. Gregart,* Prose-
cuting Attorney, and *Michael H. Dzialowski,* Assis-
tant Prosecuting Attorney, for the people.

*Roy C. Hayes,* for defendant.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] Am Jur 2d, Criminal Law §§ 525 *et seq.*
See the annotations in the ALR3d/4th Quick Index under topic
Sentence and Punishment.

Before: Wahls, P.J., and Allen and J. C. Ravitz,* JJ.

Per Curiam. On August 7, 1984, pursuant to a plea bargain, defendant pled nolo contendere to two counts of assault with intent to commit great bodily harm less than murder, MCL 750.84; MSA 28.279. Sentenced to a term of from six to ten years incarceration, he appealed as of right. We affirm.

The charges against defendant arose out of an incident which occurred on November 18, 1983. At that time defendant, a 56-year-old business man, was apparently experiencing financial difficulties. In addition to owning a business, defendant was also involved in the fur business. On November 18, defendant visited a fur dealer. Later that evening, he returned to the dealer's barn and took several furs. Shortly thereafter, two sheriff's deputies out on routine patrol attempted to make a traffic stop. When defendant's vehicle stopped, an officer started to approach the vehicle and observed defendant exit from his car with a shotgun in his hands. According to appellate counsel, defendant's actions were an "attempt at self-destruction". He fired three shots from the gun, striking the police car. The two officers returned fire but did not strike the defendant. His vehicle then sped off pursued by these officers and members of other police departments as well. Defendant was finally apprehended in a field after he abandoned his vehicle.

Charged with breaking and entering as a result of the theft of the furs, defendant pled nolo contendere to the misdemeanor offense of larceny under $100. As a result of the second incident,

* Recorder's court judge, sitting on the Court of Appeals by assignment.

defendant was charged with two counts of assault with intent to commit murder and two counts of felony-firearm.

Defendant was examined by various psychologists and their reports were made available to the sentencing judge. One report, compiled by the psychiatrist from the Center for Forensic Psychiatry, indicated that the examiner felt that defendant would not present further dangerous behavior and, if placed on a strictly supervised program of probation, would be unlikely to engage in illegal or antisocial conduct. In addition to those reports, the sentencing judge also received letters from various members of the community, including a bank president, a former probate judge, and a county sheriff, concerning defendant's case and the sentence which the judge would ultimately impose.

Defendant first claims that the sentencing court abused its discretion by imposing a sentence double that of the recommended minimum sentence under the Michigan Sentencing Manual. The abuse of discretion is further illustrated, claims defendant, by the fact that the court stated that the potential for defendant's reformation was great. Also, reports of the psychological examiners concluded that defendant was not likely to pose a threat of danger to others, thus evidencing the propriety of a lesser sentence.

Application of the guideline factors to the circumstances of this case results in a recommended minimum sentence range of from 12 to 36 months. The actual minimum sentence imposed, 72 months, does exceed the recommended range. However, such departures are expected and, as long as the trial court articulates permissible reasons in support of that decision, unless our appellate conscience is shocked, we do not afford relief. See, *e.g., People v Purzycki,* 143 Mich App 108;

371 NW2d 490 (1985); *People v Ridley,* 142 Mich
App 129; 369 NW2d 274 (1985). After reviewing
the record, we find no abuse of discretion.

The sentencing judge specifically stated that he
considered the four factors enumerated in *People v
Snow,* 386 Mich 586; 194 NW2d 314 (1972), and did
specifically state that there appeared to be some
potential for defendant's reformation. However, in
consideration of the fact that defendant had fired
three shots from a 12-gauge shotgun at a police
car during an attempted traffic stop, the judge
determined that the need to punish the defendant
and to protect society warranted the imposition of
the stated term. Sentencing is a discretionary
matter and great confidence is placed in the ability
of the sentencing judge to determine an individual-
ized sentence appropriate for both the offender and
the offense committed. *People v McFarlin,* 389
Mich 557; 208 NW2d 504 (1973); *People v Coles,*
417 Mich 523; 339 NW2d 440 (1983).

The sentencing judge was aware of defendant's
financial difficulties and the stress and pressure of
those problems. He also had access to the letters
from members of the community written on defen-
dant's behalf and the reports of the various psy-
chologists. He also was familiar with the facts
surrounding this offense and placed emphasis upon
the gravity of the conduct involved. Although
neither police officer was injured, the three shots
fired by the defendant did strike the police vehicle.
Defendant then returned to his car and fled with
the officers in pursuit. Such conduct not only
constituted a danger to the officers but also posed
a threat to the public in general. Here, after
consideration of the positive aspects of defendant's
background, the court concluded that defendant's
intolerable conduct required imposition of the six-
to ten-year prison term.

The judge stated his reason for departing from the guidelines and such justification represents a reasoned exercise of his judicial sentencing discretion. We cannot say that the reasons given for the departure are improper, insufficient or unsupportable. Therefore, we affirm the sentence.

Defendant argues that the trial court abused its discretion by allowing a 30-year-old conviction to be included in the presentence report and by considering that conviction in imposing sentence. We disagree. While evidence of convictions of a certain age are inadmissible for impeachment purposes at trial, MRE 609(b), or excluded from computation of the Prior Record Variable of the Michigan Sentencing Guidelines Manual, Tab 3 H, there is no bar to the consideration of such convictions at sentencing.

MCL 771.14; MSA 28.1144 provides that, in all felony cases, a presentence report shall be prepared and the probation agent "shall inquire into the antecedents, character, and circumstances of the person". The purpose of the statute is to provide the court with information about the offender so that the court may make an informed and just determination of the appropriate disposition. *People v Potrafka,* 140 Mich App 749; 366 NW2d 35 (1985). The scope of the information presented is broad and rules of evidence do not apply. *People v Books,* 95 Mich App 500; 291 NW2d 94 (1980). In this case, although defendant does not dispute that he had two convictions in 1947 (one for larceny and one for escape), he claims that information concerning any conviction over 10 years old is not accurate and relevant information. We disagree.

We see no valid reason why convictions over 10 years old, or 30 years in this case, may not be considered by the trial court in determining the

proper sentence. It is axiomatic that, in order to individualize a sentence to meet the circumstances of the offender, more information, as opposed to less information, is desirable. In this case, defendant does not contest the fact of the convictions or argue that the information supplied to the court is inaccurate or incorrect. Were defendant to argue that for some reason those convictions were constitutionally defective or that the information included in the report was inaccurate, the court would have had the obligation to respond to those claims. See, *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972); *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974); *People v Edenburn,* 133 Mich App 255; 349 NW2d 151 (1983). Instead, when defendant objected to the inclusion and consideration of those prior convictions because of their age, the court responded:

"But for the record, I find nothing that would preclude the convictions that are included here from being included as part of the Defendant's background. Certainly the weight that would be placed on these convictions would have to be given its proper perspective taking into consideration the lapse of time from the conviction to the present date. But that does not alter the fact of the conviction as part of the antecedent's background and character of the individual before the court."

We agree with the assessment of the trial court. Nothing precludes the convictions from being included in the report and the weight to be afforded those convictions, as with other evidence pertaining to the offender and the offense, is a matter of balancing for the court.

Affirmed.

J. C. RAVITZ, J. *(concurring)*. Though I believe the sentence imposed in this case is excessive, I too vote to affirm. I write this concurring opinion to urge further development of appellate review of sentencing.

The history of appellate review of sentencing in Michigan is artfully detailed by Justice CAVANAGH in *People v Coles,* 417 Mich 523, 528-552; 339 NW2d 440 (1983), and will not be repeated here.

In *People v Coles, supra,* the Court formulated two important new rules:

(1) "We first hold that, in order to aid the appellate review process, the trial court must at the time of sentencing articulate on the record its reasons for imposing the sentence given. Articulating reasons for imposing a sentence improves the justification for the sentence and serves to develop a rational policy on which to base sentencing in the future." 417 Mich 549.

(2) "We next hold that an appellate court shall, upon a defendant's request in an appeal by right or in an appeal by leave granted, review a trial court's exercise of discretion in sentencing, but may afford relief to the defendant *only if* the appellate court finds that the trial court, in imposing the sentence, abused its discretion to the extent that *it shocks the conscience of the appellate court."* 417 Mich 550. (Emphasis added.)

When we apply these two holdings from the *Coles* case to the facts before us, it is obvious that the sentencing judge was faced with a situation where he had a sympathetic offender who committed a terribly dangerous offense. The tension between the nature of the offender and the nature of the offense was, and is, apparent.

It is not surprising that those who know and care about Mr. Line focus their attention on him,

feel genuine sympathy for him, and urge leniency.[1] Defendant was a respected citizen of Chippewa County. Many members of his community wrote on his behalf. These people who knew defendant believed that he would not pose a danger to society, and they wanted him to be a probationer in their community.

It is also not surprising that people who focus rather more personally on the gravity of the crime, than on the nature of the offender, take a harsher view. The sentencing judge in Kalamazoo County did just that. In compliance with the first mandate of *Coles, supra,* he did articulate his reasons for the sentence. He did acknowledge that "there appears to be potential for reformation", but he also discussed the objective of "disciplining the wrongdoer", "protecting society" and "deterring others from committing like offenses". The judge said: "[T]his is an offense which involves the use of a 12-gauge shotgun loaded with 00 buckshot and I have seen the photographs of the damage done to the police cruiser."

It is probably fair to conclude that the sentencing judge in Kalamazoo County was more concerned with the shooting directed at deputies of the Kalamazoo Sheriff's Department than with the sentiments of the Chippewa County Sheriff who wrote on defendant's behalf.

The Michigan Supreme Court, in *People v Coles,*

---

[1] As I understand the defense theory, it is that severe financial problems drove defendant to steal the furs. When he saw the law enforcement officers, he fired in a moment of panic; and, it was at that point that his actions were said to have been suicidal. The record does show that when he was ordered to drop his shotgun, defendant replied, "Your *[sic]* going to have to kill me." And, indeed, before defendant was captured, the officers fired seven to nine rounds at defendant. These shots went unanswered and, fortunately, defendant was not struck by any. He was, however, struck by the deputies' vehicle, in the field where he was finally stopped. As a result he was hospitalized and had surgery. In the hospital he told nurses he had wanted the officers to kill him.

gave us two measuring rods for *expanding* appellate review of sentences and for judging when a sentence is such an abuse of discretion as to shock the conscience of the appellate court. First, they said: "The excessively severe sentence is one which far exceeds what all reasonable persons would perceive to be an appropriate social response to the crime committed and the criminal who committed it." 417 Mich 542-543.

Second, the Court discussed the problem where a sentence is "significantly disproportionate to the sentences generally imposed upon similarly situated defendants who have committed similar crimes". 417 Mich 545. Without resolving the issue of what disparities should be countenanced because of different priorities in different Michigan communities, the Court did make the ruling "that disparity in sentences which results from considerations such as the race or economic status of a defendant or the personal bias and attitude of an individual sentencing judge is unjustified and impermissible". 417 Mich 546.

When we apply these tests to the present case, whether we agree with the sentencing court's exercise of discretion or not, it is at least clear that the three members of this panel have not had their appellate consciences shocked by the imposition of a six- to ten-year prison sentence.

Two Court of Appeals jurists have wrestled with the foregoing concepts and their own appellate consciences in a way that I wish to underscore. In *People v Landis,* 139 Mich App 120; 361 NW2d 748 (1984), Judge KELLY, dissenting, wrote: "I * * * do not know how sensitive, informed and rational my conscience is in comparing sentences imposed by trial courts to an 'ideal penalty', whatever that is." 139 Mich App 123. He subsequently confessed "to foundering in a quagmire of conflicting considera-

tions" while expressing a "conscience * * * rendered insipid from overexposure to multitudes of lesser penalties for [more] violent and heinous crimes" than the forgery and uttering and publishing case before him. *Id.*

Judge SHEPHERD wrote a separate, concurring opinion in *People v Rutherford,* 140 Mich App 272; 364 NW2d 305 (1985), to "urge the Supreme Court to provide more specific guidance as to how sentences should be considered and reviewed by this Court in light of *People v Coles".* 140 Mich App 278. He added:

"My concern is that the present framework of sentence review provides no surer means of curing such abuses than existed prior to *Coles, supra.* Reliance upon the 'conscience of the appellate court' will not result in justice evenly applied across the state, for we, like members of society generally, vary in what our consciences dictate.

"In actuality, this Court has tended to review *Coles* issues in a seemingly narrow fashion, so that the case is rare, indeed, when relief is granted, and the relief that is granted is limited to a remand. *Coles,* pp 550-551. Hence, the sentencing decision nearly always remains, as it did before, in the hands of the trial courts and is subject to the same abuses at which the Supreme Court took aim in *Coles.* On the other hand, if this Court were to assume a more dynamic posture in these matters, consistency might be equally lacking, owing to our own individual philosophies regarding treatment of offenders. We need more guidance." 140 Mich App 279-280.

No one thought that the *Coles* decision was the final word on the matter of appellate review of sentencing. Justice CAVANAGH saw it as a modest first step in a process designed to resolve the dilemmas of disparity in sentencing. He wrote: "We intend this step toward greater review of sentencing to be a starting point. The scope of

review may subsequently evolve, by means of case law or statutory enactment, into something more definite or even different from that which we announce today." 417 Mich 549.

Three months after the *Coles* decision of October, 1983, the Michigan Supreme Court took the next step in this evolutionary process by requiring all felony court judges to address sentence guidelines when sentencing any defendant for an offense covered by guidelines. Administrative Order No. 1984-1, 418 Mich lxxx (1984).[2] While adherence to the guideline range is not required, an explanation must be submitted by the sentencing judge to the Supreme Court Administrator explaining the rationale for any sentence outside the boundaries of guidelines.

The Sentence Guidelines Advisory Committee and the Michigan Supreme Court have had an opportunity by now to see thousands of cases throughout the state in which sentencing judges have either conformed to or departed from sentence guidelines. So long as nothing more is done to enforce adherence to guideline sentences or to fashion a more objective basis for appellate review, the purpose and credibility of this entire effort is in jeopardy.

The majority opinion in this case, quite correctly, states: "The actual minimum sentence imposed, 72 months, does exceed the recommended range. However, such departures are expected and, as long as the trial court articulates permissible

[2] This order was entered on January 17, 1984, and it became operative for a period of one year beginning on March 1, 1984. Administrative Order No. 1983-3 was a precursor to Administrative Order No. 1984-1. 1983-3 was an *invitation* to felony court judges to use guidelines for one year, beginning May 1, 1983, and to submit responsive forms to the Sentencing Guidelines Advisory Committee to improve their ongoing analysis. Administrative Order No. 1985-2, 420 Mich lxii (1985), entered January 23, 1985, continued Administrative Order No. 1984-1 in effect until further order of the Court.

reasons in support of that decision, unless our appellate conscience is shocked, we do not afford relief."

The problem is not the sentence in this case. The problem is to what extent are departures from guidelines to be expected? What are permissible reasons for departure? At what point is the appellate conscience shocked?[3]

I join Judge SHEPHERD who pointed out the inherent weakness that exists unless and until sentence guidelines *and* the mandate in *Coles* are sensibly unified. He wrote: "[I]f there is a lack of any direct connection between the guidelines and *Coles* review, we are left with insufficient means to evaluate the relative excessiveness of the sentences before us. If we cannot rely upon the guidelines to help form a more educated appellate 'conscience', we are left again in a realm of subjectivity * * *." *People v Rutherford,* 140 Mich App 281.

If a sensible mechanism for the enforcement of sentence guidelines is not implemented soon, then the likelihood is that sentence disparities will continue to run rampant until the Michigan Legislature intercedes and tells trial judges to function like robots and impose mandatory, prescribed sentences. I believe sentence guidelines offer the best means for promoting more equal but individualized justice. However, it is important that the next step in this evolving process be taken with care and with some degree of dispatch.

The Minnesota Supreme Court has much more experience than our courts in the area of appellate

---

[3] The "appellate conscience" is perhaps more difficult to discern than "hard core pornography" was to Mr. Justice Stewart, who despaired of ever being able to intelligibly define the term, but who could at least say "I know it when I see it". *Jacobellis v Ohio,* 378 US 184, 197; 84 S Ct 1676; 12 L Ed 2d 793 (1964).

review of sentence guidelines. In *State v Evans,*
311 NW2d 481 (Minn, 1981), that Court fashioned
a rule which I believe would serve us well. They
said:

"We now have some experience in reviewing sen-
tences imposed by judges in departing from the pre-
sumptive guidelines' sentence. After careful considera-
tion of the problem in light of that experience, we
conclude that *generally* in a case in which an upward
departure in sentence length is justified, the upper limit
will be double the presumptive sentence length. This is
only an upper limit and we do not intend to suggest
that trial courts should automatically double the pre-
sumptive length in all cases in which upward departure
is justified nor do we suggest that we will automatically
approve all departures of this magnitude. On the other
hand, we cannot state that this is an absolute upper
limit on the scope of departure because there may well
be rare cases in which the facts are so unusually
compelling that an even greater degree of departure
will be justified." 311 NW2d 483.